MARK MUELLER, Plaintiff-Appellant, v. THE BOARD OF FIRE AND PO-
LICE COMMISSIONERS OF THE VILLAGE OF LAKE ZURICH *et al.*,
Defendants-Appellees.

Second District    No. 2—93—1012

Opinion filed November 22, 1994.

Thomas F. McGuire and James A. Kempe, both of Thomas F. McGuire & Associates, Ltd., of Long Grove, for appellant.

Mark E. Burkland and Matthew E. Norton, both of Burke, Bosselman & Weaver, of Chicago, for appellees.

JUSTICE BOWMAN delivered the opinion of the court:

On May 18, 1993, plaintiff, Mark Mueller, filed an amended complaint for declaratory judgment (count I) and administrative review (count II) to contest defendants' decision to remove his name without proper grounds from the final "Register of Eligibles" for a fire fighter-paramedic position in the Lake Zurich fire department and transferring defendant Michael R. Wenzel from rank No. 2 on the "Final Firefighter/Paramedic List" to rank No. 1 on the final "Register of Eligibles" (Register) for employment purposes. The court granted the motion of defendants, the board of fire and police commissioners of the Village of Lake Zurich (Board) and Wenzel, to dismiss plaintiff's complaint for failure to state a cause of action because of inadequate factual allegations concerning the evaluation process.

Plaintiff timely appeals from the court's order of August 9, 1993, dismissing his amended complaint with prejudice. Plaintiff argues that his amended complaint stated a cause of action to determine the legality or correctness of the Board's decision and the decision was reviewable by the circuit court either by complaint for declaratory relief or for administrative review. Additionally, plaintiff argues that even if the complaint is not properly reviewable under the Administrative Review Law (Review Law) (735 ILCS 5/3—101 *et seq.* (West 1992)), it is reviewable by common-law writ of *certiorari*. We reverse and remand for further proceedings.

We briefly recite the essentially undisputed facts found in the pleadings and the limited common-law record before us. Plaintiff alleged that he was listed No. 1 out of 189 individuals on a final fire fighter list posted by the Board which was effective October 14, 1992, through October 14, 1994. Under rules of the Board, all applicants for the position in question would be required to pass nine elements of the entry-level examination process: (1) orientation; (2) preliminary character and background investigation; (3) written test; (4) physical agility test; (5) initial oral examination; (6) detailed background investigation; (7) psychological examination; (8) final oral examination; and (9) medical examination. All tests were pass-fail except for the graded written test and initial oral examination, each of which required a 70% passing grade. The failure to achieve a minimum grade in any examination element disqualified an applicant from further participation. The examination of applicants is conducted pursuant to certain provisions of division 2.1 of article 10 of the Illinois Municipal Code (Code)(65 ILCS 5/10—2.1—6 *et seq.* (West 1992)).

According to the Board's rules, an alternative testing procedure provided that, instead of administering all elements of the examination before establishing an eligibility list, the Board could test applicants on only the first five elements and defer testing on the remaining elements until a vacancy existed. When the Board acts to fill a vacancy, the applicants from the initial, conditional list are integrated into the final Register from which appointments are then made—only if those applicants pass the deferred elements of the examination, including the psychological examination.

Plaintiff and the other applicants were initially tested on the first five elements, and the remainder were deferred. According to the complaint, plaintiff was in first place and Wenzel was in second place on the conditional list. Plaintiff reported for the second oral interview on January 6, 1992. He also took a psychological examination. On January 14, 1993, he was notified by the Board that Wenzel would

now rank No. 1 on the final Register for employment purposes. It was further alleged that plaintiff had specific prior training and experience as a certified fire fighter and that Wenzel had no prior fire department or training equivalent to plaintiff's. The complaint stated that, on April 6, 1993, the Board's attorney notified plaintiff's attorney that plaintiff had failed the psychological examination for the position but declined to provide any details concerning the failed examination. A rule of the Board provides: "Each applicant shall be notified within a reasonable time of the result of his or her examination."

Plaintiff's complaint concluded that the court should rule that the Board did not have proper grounds for removing him in favor of Wenzel from the No. 1 position on the Register; that the Board should be required under the Review Law (735 ILCS 5/3—106, 3—108(b) (West 1992)) to file a record of the proceedings as its answer; and that the Board's decision to remove plaintiff from consideration was arbitrary, capricious, and contrary to the law and the manifest weight of the evidence.

The basis of the defendants' motion to dismiss was that plaintiff failed to state a cause of action. Plaintiff has argued both here and below that he cannot be expected to plead more specifically because the Board has control of the specific facts concerning the final examination elements. In support of his claim for declaratory relief, plaintiff argued that the Board failed to comply with the spirit and purpose of the Code to ensure that public employment be premised on merit. However, notice pleading is not sufficient in Illinois, and count I is too conclusory to meet the usual fact-pleading requirements of Illinois practice. (See *Knox College v. Celotex Corp.* (1981), 88 Ill. 2d 407, 426.) Even liberally construed, at this stage, the complaint did not contain sufficiently detailed facts regarding an actual or legal controversy for a declaration of rights either under the Code or under the Board's rules. (See *Alderman Drugs, Inc. v. Metropolitan Life Insurance Co.* (1979), 79 Ill. App. 3d 799, 803.) In any case, we need not further consider this issue or the availability of common-law *certiorari* as a method of review because, after reconsidering prior decisions of this court together with conflicting authority from other districts of the appellate court, we believe that the decision of the Board was subject to judicial review under the Administrative Review Law.

Defendants have maintained that plaintiff was not entitled to judicial review of the Board's decision because of this court's earlier decision in *Barrows v. City of North Chicago* (1975), 32 Ill. App. 3d 960. *Barrows* stated that the only final administrative decisions of

the board to which the Review Law applied were those relating to the removal or discharge of officers or members of fire and police departments; the Review Law did not apply to promotions. (*Barrows*, 32 Ill. App. 3d at 962, citing Ill. Rev. Stat. 1971, ch. 24, par. 10—2.1—17; accord *Foster v. Board of Fire & Police Commissioners* (1980), 81 Ill. App. 3d 48 (location of language adopting Review Law in section 10—2.1—17 of Illinois Municipal Code dealing with subjects of removal and discharge of policemen and firemen construed to limit administrative review only to decisions dealing with removal and discharge); see *Sullivan v. Board of Fire & Police Commissioners* (1981), 103 Ill. App. 3d 167 (following *Foster*); see also *Hauri v. Batzel* (1979), 71 Ill. App. 3d 164, 168 (*dictum*).) *Barrows* correctly noted that the Review Law applies only in instances where the act creating or conferring powers on the agency, by express reference, adopts the provisions of the Review Law. *Barrows*, 32 Ill. App. 3d at 962, citing *Wilkins v. Department of Public Aid* (1972), 51 Ill. 2d 88.

The reference to the Review Law is found in the section of the Code entitled "Removal or discharge—Investigation of charges—Retirement—Review under Administrative Review Law." The third paragraph states:

> "The provisions of the Administrative Review Law *** and the rules adopted pursuant thereto, shall apply to and govern all proceedings for the judicial review of final administrative decisions of the board of fire and police commissioners *hereunder*." (Emphasis added.) 65 ILCS 5/10—2.1—17 (West 1992).

Shortly after the *Barrows* decision, in 1977 the Appellate Court, First District, construed "hereunder" to refer to all of division 2.1 rather than only to section 10—2.1—17 dealing with removal and discharge and found administrative review applicable to all final decisions of the board, including decisions concerning promotional examinations. (*People ex rel. Smith v. Board of Fire & Police Commissioners* (1st Dist. 1977), 51 Ill. App. 3d 221.) *Foster* did not agree with the *Smith* decision and continued to follow *Barrows* based on the location of the reference to the Review Law in the section dealing only with removal and discharge decisions. *Foster*, 81 Ill. App. 3d at 51.

To date, three districts of the appellate court now have reached a conclusion contrary to *Barrows* and its progeny by holding that the Review Law referred to in section 10—2.1—17 applies generally to all of division 2.1 of article 10, "Board of Fire and Police Commissioners," of the Illinois Municipal Code (65 ILCS 5/10—2.1—1 *et seq.* (West 1992)) thereby making the Review Law applicable to final board decisions other than just removal or discharge. (See *Schickedanz v.*

*City of O'Fallon* (5th Dist. 1993), 248 Ill. App. 3d 746; *Beard v. Board of Police Commissioners* (3d Dist. 1985), 130 Ill. App. 3d 692; *People ex rel. Smith v. Board of Fire & Police Commissioners* (1st Dist. 1977), 51 Ill. App. 3d 221.) In view of this split of authority, we have reconsidered our decisions in the *Barrows* line of cases and have decided to overrule them regarding the applicability of the Review Law. We hold that the Review Law applies generally to all of division 2.1 of article 10 of the Illinois Municipal Code and that the Review Law provides the exclusive method of review of all final decisions of boards under that division—unless some limited exception applies or the Review Law is deemed otherwise inapplicable. (See, *e.g., Chestnut v. Lodge* (1966), 34 Ill. 2d 567; *Troutman v. Keys* (1987), 156 Ill. App. 3d 247; *Lenard v. Board of Education of Fairfield School District No. 112* (1975), 26 Ill. App. 3d 188; *People ex rel. Peterson v. Valencik* (1970), 131 Ill. App. 2d 264; see also *Castaneda v. Illinois Human Rights Comm'n* (1989), 132 Ill. 2d 304 (exhaustion of remedies).) The contemporary interpretations of our sister judicial districts are entitled to consideration. See 2B N. Singer, Sutherland on Statutory Construction § 49.05 (5th ed. 1992).

■ It is clear that the applicability of the Review Law depends on the construction of the term "hereunder." Because there is some ambiguity created by the use of the term and because of the location of the reference within the statute, the reviewing courts have had to resort to rules of construction. Where interpretation is required because of the ambiguity in a statute, a reviewing court will select the construction which leads to a logical result after considering the object to be obtained and the results of various interpretations of the statute. (*Jones v. Municipal Officers Electoral Board* (1983), 112 Ill. App. 3d 926, 929.) In construing a statute so as to give effect to the intention of the legislature, a court will read the provisions of the statute as a whole in conformity with its dominating general purpose and in accordance with its practical application. (*Balmes v. Hiab-Foco, A.B.* (1982), 105 Ill. App. 3d 572, 574.) The court seeks to determine the objective of the statute and the evils intended to be remedied. (See *Harris v. Manor Healthcare Corp.* (1986), 111 Ill. 2d 350, 362.) In doing so, a court will avoid a construction which results in absurdity, inconvenience, or injustice, or renders the operation of the law difficult. *Harris*, 111 Ill. 2d at 363; *Village of Spring Grove v. Doss* (1990), 202 Ill. App. 3d 858, 864; *People v. Mullinex* (1984), 125 Ill. App. 3d 87, 89; *Balmes*, 105 Ill. App. 3d at 575.

■ In examining division 2.1 as a whole, it is clear that the legislature intended that the Board promulgate rules to provide for the orderly appointment and promotion of employees based on pub-

lic, competitive, qualifying examinations and for the removal of such employees only for cause. (65 ILCS 5/10—2.1—6 (West 1992).) These functions are intertwined in the rules provisions which are intended to provide for a unified system—premised on merit, the ability to perform, and good character—for the employment, retention, and discharge of members of fire and police departments. (See, *e.g.*, 65 ILCS 5/10—2.1—4, 10—2.1—5, 10—2.1—6, 10—2.1—15, 10—2.1—17 (West 1992).) The statutory scheme is intended to guarantee access to eligibility for employment based on fair consideration of the applicants' qualifications. See, *e.g.*, *Peoria Police Sergeants v. City of Peoria Board of Fire & Police Commissioners* (1991), 215 Ill. App. 3d 278, 282.

■ The doctrine of *stare decisis* is not an inflexible rule requiring a reviewing court to blindly follow its own precedents. (*Molitor v. Kaneland Community Unit District No. 302* (1959), 18 Ill. 2d 11, 26.) While considerations of *stare decisis* weigh heavily in the area of statutory construction, especially where the legislature is free to change the court's interpretation of its legislation, a reviewing court should not decline to correct a prior interpretation which it finds erroneous even where it has been followed and acquiesced in for a number of years, and a court may depart from a prior settled rule where it becomes evident that it is prejudicial to the public interest. (See *McClintock v. Bi-State Development Agency* (1992), 228 Ill. App. 3d 382, 385.) While it was reasonable to construe the meaning of "hereunder" to apply only to section 10—2.1—17 of the Code, it is also equally reasonable to construe the term to apply to the entire division as has been done in *Smith*. *Smith*, 51 Ill. App. 3d at 223, relying on *People ex rel. Goldfarb v. White* (1964), 54 Ill. App. 2d 483, 489-91 ("hereunder" applied not only to section of medical malpractice act but to entire act thereby subjecting all agency decisions to uniform and consistent administrative review and not merely to decisions involving revocation and suspension of licenses).

In view of the important statutory objectives of hiring, promoting, and retaining applicants on the basis of ability and merit, we do not believe that the legislature, through mere inadvertence or happenstance, intended to shield from review all other personnel decisions of these boards except for those involving discharge or removal solely because reference to the Review Law occurs in section 10—2.1—17 of the Code. The legislature is free to clarify or amend this provision, but has not done so, and the weight of authority in this State now favors a broader interpretation. To adhere to our own prior narrow reading of the provision would promote inequitable results and inconsistencies as to the (common-law) remedies available to an ag-

grieved applicant for employment or promotion and make unavailable the salutary benefits of the Review Law. We prefer a construction which does not promote incongruous results regarding the type of personnel decisions subject to administrative review and one which promotes a readily available, uniform remedy for the citizens of this district. Where the language of a statute admits of more than one construction, a court will avoid one which leads to mischief, inequalities, and impracticality in its operation without extensive tinkering and which would otherwise require the courts to fill in a number of voids which would normally be regulated by the statute; instead, a court will prefer the construction which produces consistency in the application of the statute. *Childers v. Modglin* (1954), 2 Ill. App. 2d 292, 299.

■ "Efforts to find ways of avoiding the snare of the extraordinary remedies employed for review of administrative actions, including certiorari, mandamus, injunctive relief, and at times quo warranto, ultimately resulted, in 1945, in the adoption in Illinois of the Administrative Review Act [herein Review Law]." (*People ex rel. Fike v. Slaughter* (1961), 31 Ill. App. 2d 175, 178 (finding Administrative Review Act was exclusive remedy in determining eligibility for appointment of police officer and that *mandamus* was improper remedy).) The Review Law had two principal objectives: (1) the elimination of conflicting and inadequate common law and statutory remedies for the judicial review of decisions of administrative agencies and the substitution therefor of a single, uniform, and comprehensive remedy; and (2) to make available to persons aggrieved by administrative decisions a judicial review consonant with due process standards without unduly restricting the exercise of administrative judgment and discretion essential to the effective working of the administrative process. *Slaughter*, 31 Ill. App. 2d at 178; see *Smith*, 51 Ill. App. 3d at 223.

■ In the case at bar, the decision of the Board has been effectively shielded from judicial review either because of the specific fact-pleading requirements of traditional causes of action or possibly because of the discretionary nature of common-law *certiorari* (*Stratton v. Wenona Community Unit District No. 1* (1990), 133 Ill. 2d 413 (no absolute right to review by *certiorari*)). Plaintiff has difficulty in stating a cause of action because he has no meaningful access to the record of the Board. Yet, it is the duty of the administrative agency to provide the trial court on administrative review with a sufficiently complete record of the proceedings as its answer to the complaint so that the trial court may properly perform its judicial review function. (See *Shallow v. Police Board* (1978), 60 Ill. App. 3d 113; 735 ILCS

5/3—108 (West 1992).) The pleading requirements for administrative review are less exacting than for other causes of action. A complaint for administrative review must allege that the plaintiff was a party of record to the agency's proceedings and that his rights, privileges or duties were adversely affected by the agency's decision. (*Winston v. Zoning Board of Appeals* (1950), 407 Ill. 588, 593.) However, it is not contemplated that issues of fact will be framed by complaint and answer; rather, the review is upon the record of the administrative agency. *Lake County Contractors Association v. Illinois Pollution Control Board* (1972), 6 Ill. App. 3d 762, 767-68.

■ Although perhaps not artfully drafted, the complaint in this case appears to have met at least the minimal requirements for administrative review of the decision of the Board regarding defendant's ineligibility for a position; the decision is one which affects his legal rights, duties or privileges. (See *Schickedanz v. City of O'Fallon*, 248 Ill. App. 3d at 748.) Plaintiff is essentially claiming that the decision was either contrary to law or against the manifest weight of the evidence. It is the court's duty to protect the rights of applicants for employment and to make certain that a denial of employment is predicated upon proper legal principles. (*Cremer v. City of Macomb Board of Fire & Police Commissioners* (1994), 260 Ill. App. 3d 765, 767.) The Board should be required to provide appropriate documentary evidence regarding its decision so that the court may examine whether the decision was proper. (See *Cremer*, 260 Ill. App. 3d at 767; *Smith*, 51 Ill. App. 3d at 223.) The circuit court has the power to make any order that it deems proper to obtain from the administrative agency a record sufficient for judicial review. See *Dubin v. Personnel Board* (1989), 128 Ill. 2d 490, 498.

The judgment of the circuit court is reversed, and the cause is remanded for further proceedings not inconsistent with the views expressed herein.

Reversed and remanded.

DOYLE and COLWELL, JJ., concur.